IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01159-MEH

KELSEY RAY NELSON,

    Plaintiff,

v.

PHILIP A. DONOVAN,
CARLOS CASTILLO,
JOHN and JANE DOES 1–10, and
JOHN DOE ENTITIES 1–10,

    Defendants.

---

# ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court is Defendants Donovan and Castillo's Motion to Dismiss First Amended Complaint. ECF No. 25. Defendants move to dismiss the Plaintiff's first claim for relief under 42 U.S.C. § 1983 for violation of Plaintiff's Fourth Amendment rights against "wrongful stop and detention, false arrest, and false imprisonment." For the reasons that follow, the Court will grant the motion as to these Defendants.

## BACKGROUND

### I.   Statement of Facts

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Plaintiff in the First Amended Complaint ("FAC"), which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Defendants Donovan and Castillo are officers in the Denver Police Department. ECF No. 16 ¶¶ 4-5. On May 13, 2016, the department received a report of a domestic violence incident at the Star Motel, 3850 N. Peoria St., and dispatched Donovan to the location. *Id.* ¶¶ 9-13. At the motel, Donovan located the reported victim, G.R.,[1] who had fled the room where the alleged incident occurred. *Id.* ¶¶ 13, 18. She told Donovan that she had been in a room with the perpetrator when she attempted to call her fiancé. *Id.* ¶ 15. The perpetrator became very angry and took the phone and hit her in the face with it. *Id.* He also punched her in the jaw four times and threw a table at her. *Id.* ¶¶ 15-17. G.R. was then able to flee the room. *Id.* ¶ 18. She told Donovan the assailant was African-American and had a teardrop tattoo near one of his eyes. *Id.* ¶¶ 21-22.

Donovan proceeded to room 229, where G.R. said the incident occurred. *Id.* ¶ 23. While standing outside the room, he observed Plaintiff "in the distance" and "ordered" unnamed "officers" to "contact" Plaintiff. *Id.* ¶ 24. He also "observed" a black male named Aaron Smith in room 229 and asked Mr. Smith if he knew Plaintiff. *Id.* ¶¶ 26-27.

"Denver Police Department officers" took Plaintiff into custody, and Donovan took a photo of him. *Id.* ¶¶ 28-29. The photo showed Plaintiff in the rear of a vehicle with his hands behind his back, suggesting he was handcuffed. *Id.* ¶¶ 29, 38. Donovan did not photograph anyone else at that time. *Id.* ¶¶ 30-31. He then went to Denver Health Medical Center and showed the photo to G.R. *Id.* ¶¶ 32, 40. Donovan had observed G.R. to be intoxicated at the motel and did not ask if she had been medicated at the hospital. *Id.* ¶¶ 34-35. He also knew that G.R. had attempted to escape from the health center. *Id.* ¶¶ 35-36. While she was being carried into the hospital by medical personnel, Donovan showed her the photo of Plaintiff. *Id.* ¶ 37. G.R. nodded in the

---

[1] The FAC refers to the alleged victim only by her initials.

affirmative. *Id.* ¶ 40. Donovan asked her if the man in the photo was the one who hit her with the table, and G.R. said "yes." *Id.* ¶ 41.

The next day, Castillo was assigned to continue the investigation. *Id.* ¶ 48. Castillo "was provided" the "other officers' investigation reports" and reviewed a video statement in which G.R. said the attacker had a teardrop tattoo near his eye. *Id.* ¶¶ 49, 51, 53. Additionally, Donovan told Castillo that G.R. was intoxicated and stumbling when she arrived at the hospital. *Id.* ¶ 50.

Plaintiff voluntarily spoke with Castillo and told him that Plaintiff first encountered G.R. that night at an AutoZone, and she was already injured at that time. *Id.* ¶¶ 57-60. He also said G.R. was with an unidentified black male. *Id.* ¶ 58. The unknown male told Plaintiff that G.R. "was trouble" and had just been "beaten up by her boyfriend." *Id.* ¶ 61. Plaintiff told Castillo that he was not responsible for any of G.R.'s injuries. *Id.* ¶ 62. Castillo was also aware that Plaintiff did not have a teardrop tattoo on his face. *Id.* ¶ 65.

Castillo received several extensions from the Denver District Attorney to continue his investigation. *Id.* ¶ 66. He eventually submitted the case to the District Attorney, who declined to file charges. *Id.* ¶ 70. During the investigation, Plaintiff was incarcerated for "several days." *Id.* ¶¶ 71-72. While in custody, Plaintiff suffered emotional damages and was assaulted by a cellmate. *Id.* ¶¶ 73-74.

## II. Procedural History

Plaintiff initiated this suit on May 12, 2018, ECF NO. 1, and filed the operative FAC on October 10, 2018, ECF No. 16. The FAC asserts two claims for relief, both under 42 U.S.C. § 1983: (1) violation of Plaintiff's Fourth Amendment rights against "wrongful stop and detention, false arrest, and false imprisonment," and (2) a violation of his Fourth Amendment rights against malicious prosecution. Plaintiff voluntarily dismissed the second claim for relief on January 11,

2019. *See* ECF Nos. 43, 44. Here, Defendants seek to dismiss the remaining claim arguing that Plaintiff fails to allege his constitutional rights were clearly established at the time of the incident, to plausibly state Donovan and Castillo personally participated in the alleged violations, and to demonstrate reasonable suspicion for the stop and probable cause for the unlawful seizure. Because Defendants fail to persuade this Court by binding or persuasive legal authority that it is proper in a Rule 12(b)(6) analysis to make determinations of reasonable suspicion and/or probable cause, the Court will not engage in such analysis, but will consider the Defendants' other arguments.[2]

## **LEGAL STANDARDS**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations that are legal conclusions, bare assertions, or merely conclusory. *Id.* at 678–80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief."

---

[2] The Supreme Court and Tenth Circuit cases cited by Defendants on page 5 of their motion do not involve reasonable suspicion or probable cause determinations in Rule 12(b)(6) analyses. *See* Mot. 5. Otherwise, in the cited unpublished decision by a magistrate judge in this District, the court considered, at the request of both parties, an indisputably authentic audio/video recording that was central to the plaintiff's claim for a Rule 12(b)(6) analysis. *See Jackson v. Gatto*, No. 13-cv-02516-CBS, 2014 WL 2743130, at *3 (D. Colo. June 17, 2014). Here, however, Plaintiff does *not* concede that consideration of the Defendants' exhibits is proper for a Rule 12(b)(6) analysis, but argues that, even if the Court were to consider them, factual issues exist precluding dismissal. Resp. 8.

*Id.* at 681.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *SEC v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)).  "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)).  Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*. (quotation marks and citation omitted).

**DISCUSSION**

Plaintiff does not appear to sue Defendants in their official capacities;[3] thus, in seeking to dismiss Plaintiff's Fourth Amendment claims, the named Defendants assert the defense of qualified immunity in their individual capacities. Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It "is an entitlement not to stand trial or face the other burdens of litigation." *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006). "The privilege is an immunity from suit rather than a mere defense to liability." *Id.*

When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). The Supreme Court affords courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009). In accordance with the Defendants' presentation of the arguments, the Court will begin by determining whether Plaintiff has demonstrated on the facts alleged that his constitutional rights were clearly established in May 2016.

---

[3] For his first claim, Plaintiff alleges, "The actions as described herein of Defendant Officers, while acting under color of state law, deprived Plaintiff of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, including the right to freedom from unreasonable seizure as guaranteed by the Fourth Amendment to the Constitution of the United States of America, made actionable pursuant to 42 U.S.C. §1983." Compl. ¶ 79.

In determining whether a constitutional right was "clearly established" for purposes of qualified immunity, courts must "assess[ ] the objective legal reasonableness of the action at the time of the alleged violation and ask[ ] whether the right was sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Estate of Ceballos v. Husk*, 919 F.3d 1204, 1212 (10th Cir. 2019) (quoting *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001)). "To be clearly established, ordinarily there must be prior Supreme Court or Tenth Circuit precedent, 'or the weight of authority from other circuits,' that would have put an objective officer in [defendant's] position on notice that he was violating [plaintiff's] Fourth Amendment rights." *Id.* at 1213.

The Supreme Court recently issued an opinion addressing the "clearly established" prong of a qualified immunity defense for a Fourth Amendment claim. *See City of Escondido v. Emmons*, -- U.S. --, 139 S. Ct. 500 (2019).[4] In reversing the court of appeals' decision finding a right against excessive force to be clearly established, the Court re-emphasized that "the clearly established right must be defined with specificity" and not "at a high level of generality." *Id.* at 503; *see also White v. Pauly*, -- U.S. --, 137 S. Ct. 548, 552 (2017) ("Today, it is again necessary to reiterate the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.' … Otherwise, '[p]laintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'") (citations omitted). The Court explained that "[t]he Court of Appeals should have asked whether clearly established law prohibited the officers from stopping and taking down a man in

---

[4] The opinion was issued on January 7, 2019, four days before Plaintiff filed his response.

7

these circumstances." *Emmons*, 139 S. Ct. at 503. More specifically, the Court cited its decision in *District of Columbia v. Wesby*, 583 U.S. --, 138 S. Ct. 577, 581 (2018), saying:

> "[W]e have stressed the need to identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment.... While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular [action] beyond debate.... Of course, there can be the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances.... But a body of relevant case law is usually necessary to clearly establish the answer...."

*Id.* at 504. Accordingly, in this case, Plaintiff must identify a Supreme Court or Tenth Circuit case in which an officer acting under similar circumstances was held to have violated the Fourth Amendment.

For his first claim for violation of the Fourth Amendment, Plaintiff alleges "Defendant officer(s) intentionally stopped and detained Plaintiff Kelsey Ray Nelson without legal justification" and "Defendant(s) knowingly failed to release Plaintiff after a reasonable time." Am. Compl. ¶¶ 77, 78. Plaintiff argues that "[v]iewing Plaintiff's allegations in the light most favorable to him, it should have been sufficiently clear to Defendant Donovan that with other African-American males in the area, ordering the tattoo-free Plaintiff detained before he was identified as the assailant by the victim[ ] violated his Fourth Amendment rights." Resp. 7-8. He contends his right was clearly established by the Supreme Court's opinions in *United States v. Sokolow*, 490 U.S. 1, 7 (1989) and *Florida v. Bostick*, 501 U.S. 429, 434-37 (1991). *Id.* Under prevailing law, the cases cited by the Plaintiff must be specific enough to notify Donovan that he was violating the law when he ordered a person, who did not fit part of a description given by the victim and who was one of other males of the same race also in the area, stopped and detained before the victim identified him as the assailant. In addition, Plaintiff alleges that Defendant "Castillo did not attempt to secure Plaintiff's release pending his delayed investigation," "Plaintiff was

incarcerated in the Denver Detention Center for several days," and, "Plaintiff was held at the Denver Detention Center without charges officially being filed against him" (Am. Compl. ¶¶ 68, 71, 72). Plaintiff must show the law was clearly established that "knowingly failing to release Plaintiff after a reasonable time" would violate the Fourth Amendment.

In *Sokolow*, the Supreme Court found that Drug Enforcement Agency officers did *not* violate the Fourth Amendment when they stopped and detained the plaintiff on a reasonable suspicion that he was transporting illegal drugs. 490 U.S. at 11. Plaintiff's citation to page 7 of the opinion reveals the Court's recitation of the legal standards for determining reasonable suspicion and probable cause for a Fourth Amendment violation; as this citation reflects no violation of the Fourth Amendment and points to nothing more than "a high level of generality," *Sokolow* does not suffice to notify Donovan or Castillo that they were allegedly violating Plaintiff's rights.

In *Bostick*, the Supreme Court was asked to determine whether a police encounter on a particular bus constituted a "seizure" within the meaning of the Fourth Amendment; the Court held that "to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." 501 U.S. at 439. Plaintiff cites to pages 434-437 of the opinion, which reflect the Court's discussion of what constitutes a "seizure" when police approach and stop a person; again, this citation reflects no violation of the Fourth Amendment and shows only a high level of generality in defining a Fourth Amendment right. *See Weigel v. Broad*, 544 F.3d 1143, 1170 (10th Cir. 2008) ("The Fourth Amendment's general prohibition against unreasonable seizures is cast at too high a level of generality to clearly establish the law.").

9

Plaintiff also cites to *Anderson v. Blake*, 469 F.3d 910 (10th Cir. 2006) in reciting the standards required for establishing a qualified immunity defense. While *Anderson* involved facts and law different than that here, the court cited the Supreme Court's opinion in *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) saying, "general statements of the law are not inherently incapable of giving fair and clear warning" and, thus, "a general constitutional rule that has already been established can 'apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful.'" *Anderson*, 469 F.3d at 913-14. However, the Tenth Circuit has noted in later decisions that the standard set forth in *Hope* regarding clearly established law "appears to have fallen out of favor, yielding to a more robust qualified immunity." *N.E.L. v. Douglas Cty., Colorado*, 740 F. App'x 920, 928 n.18 (10th Cir. 2018), *reh'g denied* (July 17, 2018), *cert. denied*, 139 S. Ct. 1320 (2019) (citing *Aldaba v. Pickens*, 844 F.3d 870, 874 n.1 (10th Cir. 2016) and *Mullenix v. Luna*, -- U.S. --, 136 S. Ct. 305, 308, 312 (2015)).

Moreover, with respect to Defendant Castillo's alleged failure to secure Plaintiff's release, the Court notes the Tenth Circuit has acknowledged that a "right to a prompt probable cause determination" as a "prerequisite to extended restraint of liberty following arrest" was clearly established as of its May 3, 2013 decision in *Wilson v. Montano*, 715 F.3d 847, 852-53 (10th Cir. 2013). However, in this case, Plaintiff does not allege that Castillo failed to demonstrate probable cause for Plaintiff's extended detention but, rather, that Castillo arranged for no release although no official charges were filed against Plaintiff. Am. Compl. ¶ 72. Plaintiff cites to no cases demonstrating that Plaintiff's right was clearly established.

In sum, the Court finds the Plaintiff has failed to meet his burden to identify a Supreme Court or Tenth Circuit case in which a police officer was held to have violated the Fourth

Amendment when he ordered a person, who did not fit part of a description given by the victim and who was one of other males of the same race also in the area, stopped and detained before the victim identified him as the assailant. Plaintiff also fails to identify a Supreme Court or Tenth Circuit case in which an investigating police officer was held to have violated the Fourth Amendment when he did not attempt to secure the release of a person who was detained for several days without the filing of formal charges.

"The proffered case law 'must be particularized to the facts of the instant case. … And it's the plaintiff's burden to identify the relevant clearly established law." *See N.E.L.*, 740 F. App'x at 929 (citations omitted); *see also Quinn v. Young*, 780 F.3d 998, 1014-15 (10th Cir. 2015) (rejecting a "generalized approach to clearly-established-law analysis" and concluding the plaintiffs failed to carry their burden "of identifying cases that constitute clearly established law on these facts" for a Fourth Amendment false arrest claim). In fact, the Tenth Circuit has unambiguously emphasized that it is a plaintiff's[5] burden to cite to cases that satisfy the burden of demonstrating the asserted law is clearly established. *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010) ("The plaintiff bears the burden of citing to us what he thinks constitutes clearly established law."); *see also Gutierrez v. Cobos*, 841 F.3d 895, 903 (10th Cir. 2016) ("Plaintiffs failed to carry their burden of showing that [the defendants] violated clearly established federal law because their counsel did not make any legal argument in the district court to rebut qualified immunity" and "[b]ecause Plaintiffs did not proffer clearly established authority that Ms. Flores was seized, they did not carry their burden to rebut qualified immunity on this illegal seizure claim"); *Rojas v. Anderson*, 727 F.3d 1000, 1005-06 (10th Cir. 2013) ("given the sparsity of Plaintiff's argument and his failure to point to any authority to support his claims, both here and in the district court,

---

[5]This appears to be particularly true for plaintiffs represented by counsel.

Plaintiff, 'through his counsel, [has simply] failed to carry the burden assigned to him by law.'") (quoting *Smith v. McCord*, 707 F.3d 1161, 1162 (10th Cir. 2013)).

In this case, the Plaintiff has failed to carry the requisite burden. Therefore, Defendants Donovan and Castillo are entitled to qualified immunity from liability for Plaintiff's Fourth Amendment claims, and the Court need not proceed to the second prong of a qualified immunity analysis. *See Husk*, 919 F.3d at 1212 (quoting *Medina*, 252 F.3d at 1128) ("If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity.").

## CONCLUSION

Under prevailing law, Plaintiff is obligated to identify Supreme Court and/or Tenth Circuit cases, in which an officer acting under similar circumstances was held to have violated the Fourth Amendment, to demonstrate the Defendants in this case would understand that what they were doing violated Plaintiff's rights. Plaintiff failed to meet his burden to identify such cases. Therefore, Defendants Donovan and Castillo's Motion to Dismiss First Amended Complaint [filed November 30, 2018; ECF No. 25] is **granted**. The stay on the proceedings of this case is **lifted**.

SO ORDERED.

Dated at Denver, Colorado this 25th day of June, 2019.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge